BARBARA RUNDALL, APPELLEE, V. SAMUEL GRACE, SR., ET AL., APPELLANTS.

272 N. W. 398

FILED APRIL 2, 1937. No. 29921.

*Wear, Boland & Nye,* for appellants.

*Weaver & Giller, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

GOSS, C. J.

The petition charged that Barbara Rundall, a minor four and a half years of age, was struck and injured by the family-purpose car of Samuel Grace, Sr., as she was crossing Lake street near Creighton boulevard in Omaha, shortly after 4 p. m. February 14, 1934. The jury fixed the damages at $1,000, for which judgment was rendered. Defendants appealed. The errors relied upon are that the

court refused to instruct a verdict for defendants and overruled their motion for judgment notwithstanding the verdict.

The grounds of negligence alleged in the petition are that defendant Samuel Grace, Jr., (1) was driving the car at a high and negligent rate of speed and at a rate contrary to a city ordinance, and (2) without keeping a proper lookout, without having his car under proper control to avoid striking plaintiff, and in failing to give any warning.

The undisputed evidence shows that the Grace car came across the boulevard from the west on Lake street; the child was crossing Lake street from the south at a point at about in front of a grocery store, the entrance to which is 75 feet east of the east curb line of the boulevard; the grocery store entrance is 18 feet south of the south curb line of Lake street and the latter street is paved for 30 feet from curb to curb.

Samuel Grace, Jr., testified that he had stopped at the boulevard to let a car coming thereon, at his right, cross; after the car crossed he started across the boulevard in low gear, then shifted into second gear and started up the hill, and that he never changed his gears from that time; there was a "tow car parked out in front of the grocery store * * * right directly opposite the east entrance, out in the street;" he drove far enough north in the street to miss the tow truck two or three feet and did not see the little girl, who came running out from in front of the tow truck, until she ran right into the right front fender of his car; his car was still in second gear, going "uphill," and he estimated its speed at less than 15 miles an hour; his car did not go more than a car length when he stopped it in the middle of the street and ran back to her; he stood looking at her and Mr. McGowan drove up; the witness got in McGowan's car, and the latter picked the child up, handed her to the witness, and they took her to the Methodist Hospital; the witness remained at the hospital and gave his keys to McGowan, who was going back to the scene of the

accident; later McGowan returned to the hospital, brought him his keys and told him he drove the car over to the curb to get it out of the center of the street and locked it.

James McGowan testified that he was driving west on Lake street when the accident happened. His attention was first attracted to defendant's car when some object "rustled out between the wheels, or came back, I could not tell. And the car proceeded towards me." As he got within 25 feet he thought it was an old coat. He pulled over to the north curb and as he got in line with it he could see a child's head. Defendant's car was parked up next to the south curb and the driver had his head out of the window. McGowan called to Grace "This is a child." Defendant got out of the car and came back. They took the child to the hospital. This witness testified that the child was lying two or three feet north of the center of the street and approximately 30 or 40 feet east of the boulevard. He asked Grace how it happened, and he answered: "She darted out in front of me. * * * There was a car parked there." McGowan did not see any car parked there at the time of the accident, but when he came back from the hospital 20 or 30 minutes after the accident "there was a car parked there on the inside of the curbing." The witness testified that the driver did not slow down immediately after striking the child but went approximately 100 feet before stopping. The witness estimated the speed of Grace's car as "a normal rate of speed" which he defined as "between 25 and 30 miles an hour." In view of the fact that the witness was between one and two blocks away, coming from the opposite direction, and testified that he did not notice Grace's car until after the child rolled out from beneath it, we attach very little, if any, probative value to his estimate of the speed of the car. That of itself would not prove that it was being driven at any rate of speed an hour. McGowan further testified that the tow car was inside the curbing at the filling station.

Joe Costello testified that he has a place of business on the southeast corner of Creighton boulevard and Lake

street, where he sells trucks, cars, gasoline, tires and auto parts; he saw the Grace car stop 100 feet east on Lake street and saw McGowan, who parked his car on the north side of Lake street, pick the little girl up in the middle of the street; there was no other car in the street, but there was a car parked inside the curb at the gasoline station. This testimony corroborated that of McGowan.

The only acts of negligence submitted by the trial judge in his instructions were that defendant Samuel Grace, Jr., was (1) "operating said automobile at a negligent rate of speed," and (2) "failed to have said automobile under proper control." These instructions are not criticized. The jury were carefully instructed that, if plaintiff ran out from the curb at a time when defendant was unable by exercising reasonable care to avoid contact with her, the verdict should be for defendant. All appropriate phases were stated in the instructions on this theory.

The verdict was evidently based upon the charge that defendant was operating his car at a negligent rate of speed in the circumstances (even though at only 15 miles an hour or less, as he testified), or that he did not have the car under proper control in the circumstances, or on both points.

McGowan's testimony was sought to be impeached by a statement he had signed as to the distance Grace's car had gone before stopping after the collision. That statement said the car had stopped "10 or 12 feet east of where the girl lay." McGowan's excuse for the statement is that he was not under oath, did not read the statement as closely as he should have done, and that he wanted to let the young fellow down as easily as possible when he asked him to sign the statement. The whole matter was for the jury to decide as to when the witness was telling the truth— whether in the written statement or on the witness-stand in the trial.

There were issues of fact arising on account of the difference between the testimony of McGowan, on the one hand, corroborated by Costello, and that of Samuel Grace, Jr.

These issues of fact were submitted to the jury and were decided by them in favor of plaintiff. It should be stated that the bill of exceptions discloses that during their deliberations the jury requested to be permitted to view the scene of the accident, and, by consent of both parties, they were taken there in charge of a sworn officer of the court. Comp. St. 1929, sec. 20-1108. "The jury may take into account the result of their observations at the *locus in quo* and make it, in connection with the other evidence, the basis of their verdict." *Chicago, R. I. & P. R. Co. v. Farwell,* 60 Neb. 322, 83 N. W. 71.

There were material and disputed issues of fact to be submitted to the jury. The judgment based upon their verdict is

AFFIRMED.

CARTER, J., dissenting.

I cannot concur with the opinion adopted by the court. It does not disclose a single act of negligence upon which a judgment for the plaintiff can be supported. It is conceded by the opinion that the testimony of James McGowan, an eyewitness, as to the speed of the car has little probative value. The defendant Samuel Grace, Jr., testified that he was traveling less than 15 miles an hour. No one else testified to the speed of the car. Excessive speed was therefore not established.

Samuel Grace, Jr., testified that the child ran in front of his car unexpectedly and that he was unable to avoid the injury. It is true that Grace testified that his view of the child was obstructed by a tow truck parked in the street, while other witnesses placed it inside the curb line. I fail to see that this difference is important as long as the truck was in a position to obscure his view of the child. There is no evidence that Grace failed to have his car under control or keep a proper lookout. The burden of proof is upon plaintiff to prove the negligence of Grace by a preponderance of the evidence. This plaintiff has failed to do.

The majority opinion disposes of this feature of the case by saying: "The verdict was evidently based upon the

charge that defendant was operating his car at a negligent rate of speed in the circumstances (even though at only 15 miles an hour or less, as he testified), or that he did not have the car under proper control in the circumstances, or on both points." It is quite apparent from this statement that the writer of the majority opinion was unable to find evidence in the record of any specific act of negligence and had to venture into the realm of conjecture as to what the jury found in order to sustain this judgment.

The majority opinion fails to disclose evidence of anything the driver of the car did that he ought not to have done or anything that he failed to do that he should have done. He is liable only for his negligence which is established by a preponderance of the evidence. No act of negligence being proved, the jury should not have been permitted to express their sympathy and charity by directing another to pay that for which he is not liable. The trial court should have directed a verdict for the defendants.